UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE BUCKMILLER,

                      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                      Defendant.

_____/

Case No. 20-11387

Mark A. Goldsmith
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 17)**

Plaintiff Stephanie Buckmiller brings this action pursuant to 42 U.S.C. §
405(g), challenging the final decision of Defendant Commissioner of Social
Security ("Commissioner") denying her applications for disability insurance
benefits under the Social Security Act.  This matter is before the United States
Magistrate Judge for a Report and Recommendation on Plaintiff's motion for
summary judgment (ECF No. 13), the Commissioner's cross-motion for summary
judgment (ECF No. 17), Plaintiff's reply (ECF No. 18) and the administrative
record (ECF No. 11).

For the reasons below, it is **RECOMMENDED** that the Court **DENY**
Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's

motion for summary judgment (ECF No. 17), and **AFFIRM** the Commissioner's decision.

## I.   DISCUSSION

### A.   Background and Administrative History

Plaintiff previously filed an application for disability insurance benefits and supplemental security income alleging her disability began on June 6, 2015.  (ECF No. 11, PageID.52).  She received an unfavorable decision on March 15, 2017. (*Id.*).

On April 12, 2018, Plaintiff filed a new application for disability insurance benefits alleging disability beginning March 16, 2017, at the age of 36 years.  (*Id.*). That new application is currently before the Court.  Her disability report depicts two ailments which diminished her ability to work: coronary artery disease and chronic cough.  (*Id.* at PageID.212).  Her application was denied on June 7, 2018. (*Id.* at PageID.52).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (*Id.* at PageID.124-25).  On February 22, 2019, ALJ Latanya White Richards held a hearing, at which Plaintiff and a vocational expert ("VE") testified.  (ECF No. 11-1).  On April 2, 2019, the ALJ issued an opinion which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 11, PageID.52-69).  Plaintiff later submitted a request for

review of the hearing decision.  (*Id.* at PageID.187-88).  On April 7, 2020, the

Appeals Council denied Plaintiff's request for review.  (*Id.* at PageID.38-42).

Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on May 30, 2020

**B.     Plaintiff's Medical History**

Plaintiff underwent open heart surgery, specifically coronary artery bypass

graft with coronary catheterization, in 2015.  She experiences rib and sternum pain

resulting from the surgery.  (ECF No. 11, PageID.256).  Plaintiff's primary care

office visit records since the alleged onset date include consistent complaints of

chest wall pain and tenderness on palpation, but otherwise generally normal

objective findings.  For instance, on March 15, 2017, Plaintiff reported pain at the

surgical site.  It was believed the pain may have been caused by misaligned ribs

and a gap on the left side of her sternum.  A CAT scan of her chest reflected good

healing since surgery.  On physical examination, she had normal tone, motor

strength, and movement in all extremities, but tenderness on the left sternal wall

with palpation.  It was recommended she consider taking Gabapentin for the pain.

(*Id.* at PageID.268).  From that visit through April 2018, the medical records

contain largely the same information—complaints of sternal pain with exertion and

at rest for which she was taking pain medication Norco, and normal

musculoskeletal examination except tenderness on palpation of the left sternal wall

(where recorded).  (*Id.* at PageID.254-66).  On July 10, 2018, Plaintiff reported being stable on her medication, but that she struggled to lose weight because she had trouble finding an exercise program which did not cause her pain.  (*Id.* at PageID.300).  The plan was to continue the Norco as needed for her chest wall pain.  (*Id.* at PageID.302).

During January and February 2018, Plaintiff was seen by Dr. Haouilou at Premier Vascular Associates for a diagnosis on her leg pain and swelling.  She obtained a diagnosis of venous insufficiency with varicose veins of bilateral lower extremities.  The plan was for her to wear compression stockings and undergo a venous insufficiency reflux study.  (*Id.* at PageID.249).  That study revealed no evidence of DVT (deep vein thrombosis) and no evidence of significant venous reflux.  Plaintiff was "encouraged to continue wearing compression stockings as well as follow-up and exercise as well as stretching program [sic]."  (*Id.* at PageID.250).

Plaintiff treated with Dr. Mouhammed Joumaa at Cardiology Associates of Michigan for her cardiac-specific needs.  On June 6, 2017, Dr. Joumaa determined she was "cleared from a cardiac standpoint to continue on her current pain medication" and prescribed compression stockings for venous insufficiency.  (*Id.* at PageID.283).  On December 17, 2017, Plaintiff had mild swelling and discomfort in her legs related to her venous insufficiency.  She was instructed to

keep wearing the compression stockings.  (*Id.* at PageID.280).  During March 2018, she underwent cardiac testing and complained of chest pain around her sternum.  While she experienced chest pain during the study, a stress test revealed she had "average exercise functional capacity."  (*Id.* at PageID.274).  Her extremities were negative for any problems and she denied edema.  (*Id.* at PageID.272).

In July 2018, Plaintiff was hospitalized with complaints of chest pain.  She underwent a nuclear stress test which showed no evidence of ischemia.  She was released later that day.  (*Id.* at PageID.288, 355, 367).  "[F]rom a cardiac standpoint," Plaintiff was well compensated and stable.  (*Id.* at PageID.288).  Vascular examination reflected normal pulse throughout the lower extremities.  (*Id.*).

On September 25, 2018, she returned to Dr. Joumaa for a follow-up visit.  A catheterization the month before revealed mild coronary artery disease "requiring no intervention."  (*Id.* at PageID.286).  There was no discoloration or ulceration of Plaintiff's lower extremities.  On physical examination, she had normal pulse in the lower extremities; no clubbing, cyanosis, or calf tenderness in the extremities; and normal heart rhythm.  (*Id.* at PageID.286-87).

There are two opinions in the record from Dr. Joumaa.  On April 23, 2018, Dr. Joumaa drafted a letter for Plaintiff stating her chest pain was "still active on a

daily basis due to sternal pain from open heart surgery." (*Id.* at PageID.270).  He remarked her condition was stable with current medication management, but also advised "that Mrs. Buckmiller does not work until daily chest pain is resolved." (*Id.*).  On February 22, 2019, Dr. Joumaa provided an opinion after the administrative hearing on Plaintiff's disability claim and in response to vocational expert testimony that being off task more than 15% of the workday to elevate her legs would affect her ability to work.  Dr. Joumaa provided Plaintiff would need to take unscheduled breaks during the workday to elevate her legs above heart-level. Specifically, she would need to spend 25% of the workday with her legs elevated because of edema of her lower extremities and pain.  (*Id.* at PageID.402-03).

State agency reviewing physician Dr. Grubelich issued an opinion on June 6, 2018.  Dr. Grubelich reviewed the prior ALJ's decision; the medical records from Premier Vascular Associates, Cardiology Associates of Michigan, and Plaintiff's primary care physician; and Plaintiff's statements related to her activities of daily living.  (*Id.* at PageID.77).  He concluded the prior ALJ's RFC should be adopted because there was no new and material evidence.  He stated Plaintiff's symptoms and medical findings were unchanged and he disagreed with Dr. Joumaa's opinion that Plaintiff could not work until her chest wall pain was resolved; he opined the chest wall pain should not preclude a sedentary RFC.  (*Id.* at PageID.82).

## C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since March 16, 2017, the alleged onset date. (ECF No.

11, PageID.57). At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments: history of myocardial infarction; coronary artery disease;

atherosclerotic disease; status post coronary bypass graft surgery and coronary

catheterization with dissection; venous insufficiency with varicose veins of the

bilateral lower extremities; history of orthostatic hypotension; history of chronic

cough; and obesity. (*Id.* at PageiD.57-59). At **Step 3**, the ALJ found that Plaintiff

did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments. (*Id.* at PageID.60). **Between**

**Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual

functional capacity ("RFC")[1] and adopted the RFC determined by the ALJ in

Plaintiff's first application for disability benefits:

> to perform sedentary work . . . except the claimant could
> occasionally climb ramps and stairs, but could never
> climb ladders, ropes, and scaffolds. She could
> occasionally balance. The claimant would be precluded
> from reaching overhead with both upper extremities. She
> must be permitted to alternate between sitting and stand
> and [sic] will provided she is not off task more than 10
> percent of the work period. The claimant should have no

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> concentrated exposure to extreme cold or heat. The
> claimant's work environment must be free of fast pace
> production requirements.

(*Id.* at PageID.60-67). At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work. (*Id.* at PageID.67). At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined there

were existing jobs in significant numbers within the national economy that Plaintiff

could perform, such as inspector, sorter, and assembler. (*Id.* at PageID.68). The

ALJ therefore concluded that Plaintiff had not been under a disability, as defined in

the Social Security Act, since March 16, 2017 through the date the application was

filed. (*Id.* at PageID.69).

### D. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The

plaintiff has the burden of proof at steps one through four, but the burden shifts to

the Commissioner at step five to demonstrate that there is work available in the

national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the

burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing

*Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

###    E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see

also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court

defers to that finding 'even if there is substantial evidence in the record that would

have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581

F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.     Analysis

In her motion for summary judgment, Plaintiff argues the ALJ erred at Step Five by stating a RFC that does not include all of her limitations resulting from surgery caused by chest wall pain  and her venous insufficiency about leg pain and swelling.  As to her chest wall pain, she points to her consistent statements to doctors and hearing testimony that she experienced pain daily with and without exertion.  She also asserts there are many documented periods of unstable angina in the record.  Yet despite her consistent statements and notations of chest pain in the record, the ALJ chose to adopt the prior RFC without additional limitations to account for her pain.  As to her venous insufficiency, she asserts the ALJ should have included a limitation for elevating her legs throughout the day because of her consistent complaints and testimony that she experiences leg pain and swelling with exertion as well as Dr. Joumaa's opinion she would need to elevate her legs 25% of the day.  Plaintiff contends the ALJ also erred in finding the State agency physician's opinion persuasive but her treating cardiologist's opinions unpersuasive.  (ECF No. 13, 18).

In response, the Commissioner first argues Plaintiff's contention that the ALJ held the burden of establishing the RFC at Step Five is erroneous.  Instead, the RFC is assessed prior to Step Five, and Plaintiff carries the burden of demonstrating she is disabled.  Next, the Commissioner argues the ALJ's decision

is supported by substantial evidence.  The ALJ found Plaintiff's subjective

statements not entirely consistent with the evidence, and Plaintiff did not challenge

that determination.  The ALJ also discussed the relevant medical records showing

normal physical and objective examinations of Plaintiff's heart and legs.  The

Commissioner asserts the ALJ's assessment of the opinion evidence is also

supported by substantial evidence.  (ECF No. 17).

As mentioned, Plaintiff has an unfavorable ALJ decision on a prior

application for disability benefits.  The ALJ in the application before the Court

determined there was no material evidence warranting a new RFC, and thus

adopted the prior RFC under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th

Cir. 1997) and *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir.

1990).  (ECF No. 11, PageID.55).  *Drummond* and *Dennard* suggest that, if a

disability determination has become final, the Social Security Administration may

apply principles of res judicata on a subsequent claim under the same title of the

Social Security Act.  However, if the later claim involves a new disability not

previously adjudicated, res judicata does not apply.  *See Brecheisen v. Comm'r of

Soc. Sec.*, 2021 WL 6278477, at *3-4 (W.D. Mich. Dec. 21, 2021) (thoroughly

explaining these principles).  More recently, the Sixth Circuit made clear that,

while the ALJ may not be bound by a prior determination, it is still "fair for an

[ALJ] to take the view that, absent new and additional evidence, the first [ALJ's]

findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018). This is precisely the conclusion drawn by the ALJ in this case.

Plaintiff did not necessarily make an "*Earley*" challenge to the ALJ's decision about her chest wall pain, but she argues new and material evidence exists related to her venous insufficiency with varicose veins. For both conditions, she asserts the ALJ's RFC is not supported by substantial evidence because it does not caption the "full picture" of her limitations. (ECF No. 13, PageID.466). The undersigned will address the evidence and determinations on both conditions separately.

But first, although Plaintiff purports to challenge the ALJ's Step Five determination, because the hypothetical posed to the vocational expert here is essentially identical to the RFC, this is in reality a "veiled attack" on the ALJ's underlying RFC finding. *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed"); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").

"[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) *(citing Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391-92.

The undersigned will thus address Plaintiff's argument as an attack on the RFC determination prior to Step Five. The RFC is the most a claimant can still do despite her physical and mental limitations resulting from her impairments. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009).

1.    Chest Wall Pain

In support of her contention that the RFC should include greater limitations to account for her chest wall pain, Plaintiff relies heavily on her statements and testimony, emphasizing the consistency of her statements, yet she did not argue the ALJ erred in finding her subjective statements not entirely consistent with the evidence. The undersigned cannot and will not make such an argument for her. Thus, the undersigned accepts the ALJ's conclusion about Plaintiff's subjective statements—that they vary from the medical evidence. (ECF No. 11, PageID.62, 65).

The ALJ discussed the medical evidence related to chest wall pain.  This discussion included: (1) a CAT scan showing good healing of surgical site, (2) she was cleared from a cardiac standpoint to continue only on pain medication, (3) tenderness on the left side of the sternal wall, (4) she was stable on prescribed medications, (5) cardiac testing revealed no ischemia, (6) stress test reflected average exercise functional capacity and normal blood pressure response to exercise, and (7) an August 2018 EKG test showed no changes from a 2016 EKG test.  (*Id.* at PageID.64).  Based on the medical evidence, the ALJ concluded Plaintiff's reports of chest wall pain were not material because "the prior ALJ had appropriately accounted for chest pain and cardiac residuals within the prior [RFC].  For example, such factors were considered when reducing [Plaintiff's] exertional capacity to sedentary and when limiting overhead reaching, and providing for sit/stand options as well as settings free of pace/production due to pain symptomology."  (*Id.*).

The ALJ also considered Plaintiff's subjective complaints about chest pain. Even so, she concluded the "objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain . . . of such a severity or frequency as to preclude" the functional abilities listed in the RFC.  (*Id.* at PageID.65).  The ALJ further found Plaintiff's reported daily activities inconsistent with her alleged degree of limitation, such as

driving, caring for her own personal needs, going shopping, and seeing friends.
(*Id.*).  Plaintiff asserts the fact that she can engage in these activities does not speak
to how often, how long, or how well she can do so.

Finally, the ALJ considered Dr. Joumaa's April 2018 opinion advising that
Plaintiff not work until her daily chest pain was resolved.  She found the opinion
unpersuasive because (1) the determination of disability is reserved to the
Commissioner, *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.
2004) ("The determination of disability is [ultimately] the prerogative of the
[Commissioner], not the treating physician") (citation omitted), (2) Dr. Joumaa did
not specify limitations or restrictions resulting from chest pain, *see* 20 C.F.R. §
404.1520c(c)(1) ("The more relevant . . . supporting explanations presented by a
medical source are to support his or her medical opinion(s) . . . , the more
persuasive the medical opinions."), (3) the opinion was inconsistent with Plaintiff's
activities of daily living, (4) the opinion was inconsistent with the medical
evidence that Plaintiff's symptoms were conservatively managed and evidence that
the chest wall was healing well, and (5) inconsistent with notations of no more than
some tenderness to her distal sternum.  (*Id.* at PageID.67).

The ALJ properly found Dr. Joumaa's April 2018 opinion unpersuasive.
When evaluating medical opinion evidence, the ALJ need not defer or give any
specific evidentiary weight to any medical opinion, even those from treating

sources, pursuant to 20 C.F.R. § 416.920(c).  ALJs must evaluate the "persuasiveness" of medical opinions by considering five factors: supportability, consistency, relationship with the claimant, specialization and "other factors that tend to support or contradict a medical opinion."  § 416.920c(c)(1)-(5).  The "other factors" include the medical source's "familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  § 416.920c(c)(5).  The "most important factors" are the supportability and consistency of the opinion.  § 416.920c(b)(2).  The ALJ adequately addressed the appropriate factors, and her decision is supported by substantial evidence.

In the view of the undersigned, the ALJ's RFC determination about Plaintiff's chest wall pain is supported by substantial evidence.  Although the ALJ discounted Plaintiff's subjective statements, the ALJ fully accepted that she experiences chest wall pain and has experienced this pain since her surgery.  The ALJ's analysis of the inconsistency between the alleged degree of limitation and the objective medical evidence is sufficient to allow a reasonable mind to reach the same conclusion: Plaintiff's chest pain limits the range of work she is capable of performing, but not to the degree alleged.  There is evidence in support of Plaintiff's position: she underwent open heart surgery (a major surgery), she had consistent tenderness on palpation on her sternum, and she was consistently taking

pain medication to treat this pain.  But the evidence marshaled by the ALJ is substantial enough to support her decision.  Because this is so, the ALJ's decision should be upheld.

        2.     Venous Insufficiency

Plaintiff's venous insufficiency with varicose veins is a new condition since her prior unfavorable disability determination.  The ALJ, however, determined this new condition was not material, and thus adopted the prior RFC.

In arriving at her decision, the ALJ discussed the record evidence related to this impairment, including Plaintiff's complaints of daily leg pain and swelling. The ALJ observed that Plaintiff was prescribed compression stockings and was ambulating normally.  And testing revealed no evidence of deep vein thrombosis or significant venous reflux.  After this test, Plaintiff was encouraged to continue wearing compression socks, to exercise, and to stretch.  The ALJ also noted records showing no edema and a normal pulse in the extremities and no evidence of claudication (pain in the legs caused by insufficient blood flow).  (ECF No. 11, PageID.63).

Aside from the medical records, the ALJ also assessed Dr. Joumaa's February 2019 opinion on Plaintiff's venous insufficiency.  Again, Dr. Joumaa opined Plaintiff would be off task 25% of the workday to elevate her legs above heart level due to swelling in her legs.  The ALJ found this statement inconsistent

with the evidence.  Despite Plaintiff's complaints of daily severe leg pain and swelling, the record shows only conservative treatment in the form of compression stockings.  Moreover, objective examinations did not regularly document swollen legs.  Rather, she was often found to have no edema, normal pulses, and no evidence of claudication.  (*Id.* at PageID.66).  These reasons are sufficient reasons to find the opinion unpersuasive in accordance with the regulations cited above.

Plaintiff insists the ALJ's decision should be remanded because she disregarded how the venous insufficiency would affect Plaintiff's ability to work. However, the only evidence of functional limitation derives from Dr. Joumaa's opinion, which the ALJ properly discounted.  Plaintiff asserts the ALJ's assessment of Dr. Joumaa's opinion is wrongly supported by the fact that the majority of records indicate no swelling—she posits she may not exhibit edema at every examination because it comes and goes with exertion.  (ECF No. 13, PageID.474).  Doubtless there are occasions in which Plaintiff presented to her physicians without leg swelling, but experienced swelling at other unobserved times.  This fact, however, does not detract from the substantial evidence supporting the ALJ's decision, based on the medical evidence presented, to adopt the prior RFC without an additional limitation to elevating her legs during the workday.  Again, it is Plaintiff's burden to prove she is disabled.

Finally, with the conclusions above in mind, the undersigned finds no remandable error related to the ALJ's treatment of Dr. Grubelich's reviewing opinion.  It is well established "an ALJ is permitted to rely on state agency physician's opinions to the same extent as she may rely on opinions from other sources."  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015).  The ALJ can reasonably credit the opinion of a reviewing medical source, even though the source could not access the entire record, when, as here, the conclusion that the claimant retained the capacity to work was supported by the totality of the medical and vocational evidence in the record.  *Glasgow v. Comm'r of Soc. Sec.*, 690 F. App'x 385, 387 (6th Cir. 2017) (citing *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (concluding that an ALJ may rely on a state agency physician's opinion that is not based on all of the medical evidence in the record if the ALJ takes into account any evidence that the physician did not consider)).

### G.    Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment

(ECF No. 17), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: January 10, 2022                 s/Curtis Ivy, Jr.
                                       Curtis Ivy, Jr.
                                       United States Magistrate Judge